The Court took several days for advisement, and afterwards delivered their opinion as follows:—
Sewall, J.
The verdict taken in this case is objected to on the part of Phinehas Frost, the plaintiff in review, originally tenant of the land and defendant in the action, upon the ground that he justly claims, and is entitled to a certain lot, parcel of the demanded premises, containing one hundred acres, designated and awarded to him by Nathaniel Dummer, Esq., and others, commissioners appointed, and acting under certain resolves of the legislature of this commonwealth.
The parties having at the trial agreed that the verdict shall be subject to the opinion of the Court, upon the general and unembarrassed question, whether Phinehas Frost is thus entitled or not, the result may depend upon facts which have happened since the commencement of the action, and every possible injury, if he w»>-e *99 iable to any, from the admission at the trial, that he claimed under the title of the demandant, is prevented. If he has the right he claims, however it may have been acquired, whether under the demandant, or in any manner resulting in the award of the commissioners, and whether before or since the commencement of the action, the verdict is to be amended in his favor; thus placing him upon the most liberal footing, which can be devised in a court of law, for the investigation and adjustment of his claim.
Phinehas Frost, tenant of the land demanded, entered thereon in 1793, declaring his intentions to cut timber-trees there for the employment of a mill he had erected or purchased in the neighborhood. He was at the time notified of his trespass, and warned to desist, and, finally, within about a year, after his entry was served with a writ in the action which is now in trial.
By the commissioners to whom he has since carried his claim, he has been considered as a settler, and the tract of one hundred acres, for which he contends, was awarded to him.
* That Frost may avail himself of this award, it must [*116] appear that the authority of this special commission extended to his case, both in fact and in law; for as to the facts essential to their authority, the ex parte decision of the commissioners is not conclusive. It might, for instance, be inquired, upon the facts stated, whether Frost was a settler within the intentions of the legislature, in the resolves under which he claims; but this I pass over, to examine whether the land awarded to him was within the authority of the commission.
The premises demanded in this action are a certain lot, said to have been, by persons called the Pejepscot proprietors, assigned to a right in the proprietary, and a regular title thereto deduced to the demandant; and he appears to have had, so long ago as the year 1769, the actual and several seisin of the lot described in his writ, claiming it under that allotment.
The resolve of 1798 provides, in certain events mentioned, for the quieting of all settlers Upon the undivided lands of the Pejepscot proprietors, and for releases to be given by them for that purpose. It is admitted that this resolve did not, in terms, and cannot by any reasonable construction, extend to the case of Phinehas Fiost. Recourse is then had, in his behalf, to a subsequent resolve passeu in 1801, extending the provisions respecting settlers in the former resolve to any divided lands held under the Pejepscot proprietors, and providing that settlers upon these lands also shall be quieted. The land claimed by Frost is within the terms of this resolve, and, waiving the question whether he is a settler or not, we are broughl *100 to consider the construction, and the legal effect and operation, of the resolve in the case before us.
The resolve is predicated upon a supposed omission in the former resolve, and upon intention of favor and a particular concession to the Pejepscot proprietors, in case that omission may be supplied, and the consequences of it avoided, by their consent. A grant by the legislature to an individual is not authoritative upon him, and avails only upon his acceptance and consent. This rule, observed even respecting unconditional and apparently beneficial grants, is particularly requisite respecting grants that are conditional, depending upon some act to be performed or assented to, on [ * 117 ] the *part of the grantee. Has this offer of favor, this concession on the part of the legislature, been accepted or taken advantage of, by the Pejepscot proprietors or others, to whom it may be construed to have been made ? There is no evidence of any fact of this nature; and it is agreed that the condition annexed to the grant or concession has never been complied with. What, then, is the effect of this last resolve; what legal operation has it had upon the claim of Phinehas Frost; or what authority had the commissioners, under that resolve, to make an award of divided lands, before the Pejepscot proprietors had consented to consider them as undivided lands, for the purpose of quieting settlers; or before the proprietors had taken advantage of the concession therein, which might have implied their consent to the alternative required of them ?
But it is said, the last resolve, besides the concession of land to the Pejepscot proprietors, contains a distinct and independent grant to the settlers described therein, which operates independently of the consent of the Pejepscot proprietors. This resolve provides that settlers upon the divided lands of the Pejepscot proprietors shall be entitled and quieted, in the same manner as the settlers upon the undivided lands of those proprietors according to the former resolve.
If this is to be construed a disposal by the legislature of lands owned by that proprietary, or by any individual claiming by their grantor allotment, it militates directly with a well-known provision of Magna Charta, revived and enforced in the bill of rights prefixed to the constitution of government for this commonwealth, “ that no subject shall be deprived of his property, but by the judgment of his peers, or the law of the land; ” not any private special statute for the purpose, but that law, which affects alike, under the same circumstances, the whole territory and community. This construction, not being the necessary, or even the natural import of the words employed, is entirely inadmissible, and was not contended for by the attorney-genera).
*101 The last resort for the defendant has been to a supposition that the legislature, in their resolves upon this subject, acted without regard to any claim of right in the Pejepscot proprietors, or those claiming under them; and assuming the property *in question to be in the commonwealth, and viewing as [*118] well those called the Pejepscot proprietors as the settlers to be mere occupants, directed this release as a compromise between them.
To this it may be observed, that the difficulty first suggested is not obviated; because a title by seisin and occupation is a property, as much as any other title; though not equally indefeasible, equally beyond the control of the legislature, in any private or special statute.
Neither of the resolves, however, expresses any assumption by the legislature, of a property or right of the commonwealth in the lands in question, or any intention to dispose of them on the part of the commonwealth. The two resolves, when construed together, as they must be, provide for the settlers, whether on the undivided or divided lands, claimed by or under the Pejepscot proprietors, in the event only of an award to them, as their right and property, of such territories and boundaries as shall comprise the improvements and occupations of the settlers, to whom the legislature thought fit to extend their compassionate interference. There is no fact in evidence, from which a title in the commonwealth is to be inferred or presumed.
If the demandant, in the character of a citizen, has maintained against another citizen a real action, in which, upon comparison of title, between the parties, the lawful seisin, and presumptively the right appears to be with the demandant, no act of the legislature, with or without the interposition of commissioners, can abridge that right, or divest the title of the demandant, or oblige him to relinquish it to the other party.
The supposed demandant may be incapable of proving a title against the commonwealth; but the decision between them upon the question of title, if it should arise, must be by the peers, or jury of the country, and according to the law of the land.
Upon full consideration, my opinion is, that the verdict in this case must be confirmed, and judgment entered accordingly.
Sedgwick, J.
It appears from the report of the judge, who sat in the trial of this cause, that, as long since as the *year 1769, certain persons claiming a large tract of [*119] land comprehending the demanded premises, in pursuance of that claim, entered and made a division of a part of it, and, amongst the rest, allotted the land in controversy to Moses Little¡ *102 the demandant’s father, and one Jonathan Bagley; and it appears, and is not controverted, that, by regular conveyances, the right and title of the said Moses and Jonathan are in the demandant.
The tenant at the trial admitted that he had no title adverse to that of the demandant, but that he claimed under it. He showed no conveyance from the demandant, nor proved any contract with him relative to the demanded premises. There is then no pretence of any title derived from Little. The whole claim of the tenant rests on certain resolves of the legislature, of which he says he can avail himself, according to the agreement entered into at the trial; if, upon principles of law, a title to the demanded premises or any párt of them is vested in him. This agreement is in the following words.
[Here the judge recited the agreement, as before stated, and proceeded.] It is most manifest that the tenant cannot, upon any principle whatever, avail himself of the resolve of the 28 th of June, 1798, or of any act done under it, because that resolve did not extend to any land which had been previously divided, but was expressly confined to that which then remained undivided. This resolve, therefore, and every thing done under it, must be laid out of the case.
I cannot perceive that it is necessary to determine what is the effect of the judgment in the case of The Commonwealth vs. Little; whether it has any validity; whether it be absolute or conditional; or, if conditional, what are the nature and effect of that condition.
As I lay the judgment entirely out of my consideration of the case, it only remains to inquire whether Frost is entitled to the one hundred acres allotted to him by the report of Nathaniel Dummer and others, the commissioners appointed the 10th of June, Anno Domini 1803.
As the case presents no evidence, whatever in fact the truth may be, that the Pejepscot proprietors have ever acquired the title of the commonwealth to the land which they [*120] * claim, as they have expressly consented that the present tenant should be.permitted to establish, if he could, a title in him derived from the government, and as he rests it on the report of the commissioners appointed to carry into effect the resolve of the 5th of March, 1801, it is only necessary to ascertain the true meaning of that resolve.
There is nothing in the preamble necessary to be considered in order to understand the resolve itself, which is in these words:— “ Resolved, That the Supreme Judicial Court be, and they hereby are authorized and empowered, at any future time thereof, to receive a deed of release to the commonwealth from the said proprietors, or their agent lawfully empowered thereto, of all the *103 lands northerly of the northerly bounds of the tracts awarded to the said Pejepscot proprietors aforesaid, which in their opinion shall be sufficient to bar the said proprietors from any future claim to such lands; provided, and on condition, the said proprietors, or any person or persons holding lands under them,” &c., “ shall agree to consider the same, so far as it respects the settlers thereon, as undivided lands; and the commissioners to be appointed by the governor and council in pursuance of the resolve of June 29, 1798, shall value all the said settlers’ lots in the same manner as lots on the undivided lands;—and said settlers on all the lands aforesaid, whether divided or undivided, shall be quieted in the same way as settlers on the undivided lands are to be quieted by the resolve aforesaid.”
A principal object of the resolve was to authorize this Court to receive a deed of release from the proprietors; but this was upon condition, that they or any person or persons holding lands under them, as particularly described, should agree to consider the same, so far as respects the settlers on the same, as undivided lands. It then proceeds to direct what, in consequence thereof, the commissioners should do, that the settlers on all the land aforesaid, whether divided or undivided, should be quieted.
But it is most manifest that this should be done only on condition of the previous agreement of the proprietors; and as this agreement has never been made, the merits of the parties *are not at all affected by the resolve, but remain as [ * 121 ] they were antecedent to it. That is, the title exhibited by the demandant which is sufficient to maintain his action, remains unopposed by any title on the part of the defendant. I am therefore in favor of rendering judgment agreeably to the verdict.
Parsons, C. J.,
observed that he had not, when at the bar, been retained as counsel in this cause by either " party; but that he was counsel for the demandant, and for the Pejepscot proprietors, in defending them against an information of intrusion sued by the commonwealth, in which the boundaries of the company’s claim had been reported by commissioners under a rule of court. That for this reason he should not have sat as a judge in this cause, if without him a court could have been composed competent to give judgment. As that could not be done, he had sat as a judge, with a determination to give no opinion, if his brethren, who sat with him, had disagreed. As they agreed in their opinion, it was not necessary to say that he concurred, and that judgment must be rendered according to the verdict.
Thatcher, and Parker, justices, having been of counsel in the cause before coming on the Bench, gave no opinion.
Judgment according to verdict.